AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

EASTERN DISTRICT OF NORTH CAROLINA


FILED
APR 11 2014

JULIE A. RICHARDS, CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

UNITED STATES OF AMERICA

V.

KELVIN MELTON
a/k/a "Dizzy"
a/k/a "Old Man"

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 5:14-MJ-1316

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __April 5 to April 10, 2014__ in __Wake County__ county, in the __EASTERN__ District of __NORTH CAROLINA__ defendant(s) did, (Track Statutory Language of Offense)

knowingly combine, conspire, confederate, and agree to commit an offense against the United States, that is to unlawfully seize, confine, decoy, kidnap, abduct, carry away, and hold for ransom, reward, and otherwise a person, and to willfully transport said person in interstate commerce using instrumentalities of interstate and foreign commerce, to wit, automobiles, public roads, and cellular phones, in violation of Title 18, United States Code, Section 1201(a), and did commit at least one overt act in furtherance of said conspiracy, all

in violation of Title __18__ United States Code, Section(s) __1201(c)__ .

I further state that I am a(n) __Special Agent__ and that this complaint is based on the following
                                   Official Title

facts:

See Attached Affidavit

Continued on the attached sheet and made a part hereof:  [x] Yes   [ ] No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

April 11, 2014                                at       Raleigh, NC
Date                                                   City and State

James E. Gates                                _____
Name & Title of Judicial Officer                Signature of Judicial Officer

DMD



## Affidavit for Criminal Complaint

### Introduction

Your affiant, Special Agent Steven F. Jessup, of the Federal Bureau of Investigation (FBI), Raleigh Resident Agency, having been duly sworn, states the following:

1. I am a duly appointed Special Agent ("SA") of the FBI and have been employed as such since February 12, 2012. Your affiant is currently assigned to the Charlotte Division, Raleigh Resident Agency, Raleigh, North Carolina, to investigate violations of federal law. Your affiant is primarily assigned to investigate violations involving illegal narcotics, criminal street gangs, criminal enterprises, violent crimes, firearms violations, and interstate transportation of stolen property. Prior to becoming a Special Agent with the FBI your affiant was a Federal Air Marshal from September 2009 until February 2012. Prior to that your affiant was a Police Officer with the Atlanta Police Department from November 2002 until September 2009. Your affiant has conducted investigations which have resulted in the arrest and conviction of numerous individuals involved with illegal narcotics trafficking, firearms violations, violent crimes and criminal street gangs. I have myself conducted as well as assisted other law enforcement officers with physical surveillance, search warrants, and arrests of persons involved in violent crimes, illegal drug activity, criminal street gangs, firearm violations and stolen property.

1



DMD

2. This affidavit is submitted in support of a Criminal Complaint filed against KELVIN MELTON, a/k/a "Dizzy," a/k/a "Old Man." The information contained in this affidavit is based on my knowledge of facts and evidence obtained during the Federal Bureau of Investigation's investigation of the kidnapping of Frank Janssen. Since this affidavit is being submitted for the purpose of establishing probable cause for the issuance of an arrest warrant, I have not included each and every fact known to me concerning this investigation, and have set forth only those facts I believe are necessary for said purpose.

3. Beginning at an exact time unknown, but no later than April 5, 2014, and continuing through April 10, 2014, MELTON and others known and unknown to law enforcement, engaged in a conspiracy to seize, kidnap, and abduct Frank Janssen from Wake Forest, North Carolina, and transport Mr. Janssen to Atlanta, Georgia, where he was held hostage for ransom, reward, or otherwise, all in violations of 18 U.S.C. Section 1201(c).

4. At all times material to this affidavit, Frank Janssen was an individual residing in the Wake Forest, North Carolina, within the Eastern District of North Carolina.

5. On April 5, 2014, a heavy set white female knocked on Janssen's door. When Janssen opened the door he was assaulted by several individuals who tazed and subdued him. The individuals then forcefully removed Janssen from his home and placed him into a vehicle.

6. Janssen was then transported across state lines, using public roads, to the state of Georgia where he was held against his will at an apartment in Atlanta.

7. On Monday, April 7, 2014, at approximately 1:51 a.m., the victim's spouse began to receive a series of text messages from a phone assigned number 646-478-6115. It was determined that the messages were being transmitted from a phone in Georgia. The text messages stated that Janssen had been kidnapped and then added, among other things, that

   a. Frank Janssen was in the trunk of a car on the way to California.

   b. If law enforcement was contacted, "we will send [Mr. Janssen] back to you in 6 boxes and every chance we get we will take someone in your family to Italy and torture them and kill them . . . we will do drive by and gun down anybody," and "throw a grenade in your window."

   c. Various demands must be satisfied or harm would result to Frank Janssen and others.

   The messages made specific demands for the benefit of MELTON, an inmate at Polk Correctional Institution in Butner, North Carolina. Notably, MELTON was previously prosecuted by Frank Janssen's daughter (who is a state prosecutor) and, at the time of these events, MELTON was serving a state sentence of life without parole.

8. On April 9, 2014, at approximately 12:19 a.m., another text message was sent to the victim's wife, from a cell phone assigned number 404-640-6572. It has been determined that the message was transmitted from a

3 

DMD

residence in Atlanta. The text message included a photograph of Mr. Janssen tied up and seated in a chair. In a text message that accompanied the photograph, the sender made other demands, and stated, among other things, "Tomorrow we call you again an if you can not tell me where my things are at tomorrow i will start torchering [Mr. Janssen] ... If we find out the police seen this we kill both people now and go for you family." The text message also indicated that another individual had been kidnapped.

9. Toll records for the cell phone assigned number 404-640-6572 show that just prior to the transmission of the April 9, 2014, text message, the cell phone received a telephone call from another cell phone, assigned number 404-957-6900. It has been determined that the call from number 404-957-6900 was transmitted from a location in Atlanta, Georgia.

10. Cell phone toll records for the cell phone assigned number 404-957-6900 show that on April 8, 2014, the phone was used in connection with 24 texts and calls made to and from a cell phone assigned number 252-767-9296. The cell phone with number 252-767-9296 was identified as transmitting messages from Polk Correctional Institution in Butner, North Carolina, where MELTON is incarcerated. The cell phone toll records from this phone reflect that during the period from February 24, 2014, through and inclusive of April 9, 2014, the cell phone located within Polk Correctional Institution was used to make 99 calls to telephones subscribed to MELTON's daughters. A female associate of MELTON has

4

has identified 252-767-9296 as being MELTON's number.

11. Analysis of toll records for the cell phone assigned number 252-767-9296 also revealed that from April 6, 2014, through and inclusive of April 9, 2014, 99 contacts were made between this cell phone and a cell phone assigned number 770-364-4134.

12. Based upon the foregoing, and other evidence, law enforcement monitored the text and voice communications on the telephone assigned number 770-364-4134. Through this monitoring, law enforcement gathered the following communications:

   a. At approximately 8:20 p.m. on April 9, 2014, a call was placed between 770-364-4134 and 252-767-9296 (the phone identified as belonging to MELTON). At this time, Frank Janssen had still not been located by the FBI. The two male callers stated as follows:

      i. "The first spot we are checking out is close to the house"

      ii. "We want to make sure its in a secluded area and the ground is soft so we can go 3 ft deep."

      iii. "Get a bag, put it over his head, and stuff something in his mouth."

      iv. "However you feel like doing it, just do it."

      v. "Make sure to clean the area up. Don't leave anything. Don't leave any DNA behind"

      vi. "Get some night time medicine and make him go to sleep."

      vii. "Make him drink a whole bottle of Nyquil."

DMD

viii. "Let's do it in the wee hours of the morning."

        ix. "Make sure it is not a half-assed job. Get bleach and throw it on the walls. Maybe do it in the closet."

    b. Following this conversation, as authorities attempted to enter MELTON's prison cell to search for the cell phone assigned number 252-767-9296, MELTON temporarily barred the door and smashed the phone. The pieces of the cell phone recovered from MELTON's jail cell have been analyzed and contain identifications enabling Sprint to confirm that number 252-767-9296 was assigned to the cell phone.

    c. Later, at approximately 10:40 p.m., on April 9, 2014 during a call between cell phones assigned numbers 770-364-4134 and 678-544-7753, a male voice stated "FBI helicopters are outside. We gotta get rid of holmes." A female voice on the phone with number 770-364-4134 responded, "I'm not going anywhere, FBI are all over."

    d. At approximately 11:33 p.m., on April 9, 2014, a female using a cell phone assigned number 770-364-4134 contacted a cell number assigned 678-544-7753, and stated "They got my kids". A male voice responded by whispering: "Did they find holmes at the place?" The female responded, "I don't know."

    e. On April 10, 2014, at approximately 1:01 a.m., a telephone number 404-516-6486 called 770-364-4134 and a person stated, "They just kicked in your door." By the time of these statements, the FBI had previously made entry into an apartment in Atlanta and recovered

DMD

Frank Janssen.

13. Notably, in the midst of the search and recovery of Janssen, the law enforcement searched a residence on Heyford Court in Austell, Georgia "Heyford Court Residence". Law enforcement searched this residence in an effort to locate Janssen. This residence was of interest because one of the phones traced to the second threat message was linked to this address. In conjunction with the search of the Heyford Court Residence, the children of Tiana Maynard were taken into protective custody when it was discovered that their mother was not present.

14. A short time after the rescue and recovery of Janssen, Tiana Maynard went to the police precinct to collect her children. Maynard arrived in a blue Chevy Tahoe driven and owned by Clifton Roberts. A woman named Jenna Martin was also present in the vehicle.

15. Tiana Maynard was found in possession of the telephone with number 770-364-4134. In addition to Roberts, Maynard, and Martin, officers also observed picks, a shovel, and a loaded .45 caliber pistol inside the blue Chevy Tahoe. The picks and shovel were owned by Clifton Roberts.

16. Law enforcement later questioned a witness who revealed that Maynard and Martin admitted that they traveled to Wake Forest, North Carolina, with two males and participated in the kidnapping of Janssen. The witness conveyed that Martin admitted to going to the front door of Janssen's home and using a ruse to get Janssen to open his front door. After Janssen opened the front door, Maynard, Martin, and the two males rushed Janssen

7

DMD

DMD

and used a tazer to subdue him. Janssen was then put into a rented Silver Nissan Versa and transported to Atlanta, Georgia, where he was held captive.

_____
Steven F. Jessup
Special Agent
Federal Bureau of Investigation

SWORN AND SUBSCRIBED BEFORE ME IN MY PRESENCE THIS \_11\_ DAY OF \_APRIL\_, 2014 AT RALEIGH, NORTH CAROLINA.

_____
JAMES E. GATES
United States Magistrate Judge

8